<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EDUAL GARCIA, | : | |
| | : | Civil Action No. 12-3020 (SDW) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES, | : | |
| | : | September 2, 2014 |
| Respondent. | : | |

**WIGENTON**, District Judge

Before the Court is Petitioner Edual Garcia's ("Petitioner" or "Garcia") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("Motion"). For the reasons stated below, this Court DENIES Petitioner's Motion and DECLINES to issue a certificate of appealability.

## **FACTUAL AND PROCEDURAL HISTORY**

On May 28, 1999, a federal grand jury returned an eight-count Indictment against Garcia and eight others for their involvement in a heroin distribution network operating in Paterson, New Jersey. (Indictment, App_001-App_006.[1]) According to the Presentence Report ("PSR"),

---

[1] "App" refers to Respondent's Appendix docketed at ECF No. 13-1, which comprises the following record:

| | |
|---|---|
| Indictment | App001 - App006 |
| Plea Agreement dated Nov. 21, 2000 | App007 - App012 |
| Criminal Docket for Case# 2:99-cr-00285-SDW | App013 - App046 |
| Sep. 20, 2000 Letter | App047 - App049 |
| Plea Transcript | App050 - App074 |
| Mar. 24, 2004 Letter | App075 - App077 |
| Transcript of *Padilla* Hearing | App075 - App085 |

Garcia regularly supplied heroin to a network led by co-defendant Gregory Marshall, which distributed about 20 "bricks" of heroin (each brick is approximately 3.5 grams of heroin) per week. (PSR at ¶¶ 16-22.)

Garcia was arrested on August 11, 2000, and one month later, on September 20, 2000, he attended a proffer session with the Government. (App047 - App049.) On November 29, 2000, Garcia appeared before the Honorable Joseph A. Greenaway, Jr., then-United States District Judge, and entered a guilty plea to a one-count information that charged Garcia with conspiring to distribute more than 100 grams of heroin, in violation of 21 U.S.C. § 846. (App007–App012, App036, App047–App049.) Sentencing was scheduled for March 19, 2001, and was adjourned several times to allow Garcia to continue with his cooperation with the Government. (App036.)

Garcia's cooperation began in March 2001, when he became a confidential informant for the Drug Enforcement Administration ("DEA") in both New Jersey and New York. Specifically, between April 2002 and December 2002, Garcia participated in approximately eight supervised purchases of crack cocaine from dealers in certain housing projects in Brooklyn, New York. Garcia was able to engage the subjects of the investigation in conversations that disclosed important information from toll records and cell phones used by members of the targeted drug organization. He also identified subjects for the Government via photographs. One of the subjects was a member of the "Blood Street Gang," who had been involved in a homicide. Through this contact, Garcia purchased a handgun, ammunitions and crack cocaine. Garcia's cooperation with the Government led to the arrest of 21 individuals, and had a "dramatic impact

| Sentencing Transcript | App086 - App098 |
| Judgment | App099 - App103 |

on the hierarchy and distribution network of the [ ] drug organization which had existed for an extended period of time." (App075 –App077.)

In November 2004, while still awaiting his sentencing before Judge Greenaway, Garcia committed a gun-point home invasion in Randolph, New Jersey. (PSR at ¶¶ 29, 54-59.) In June 2006, Garcia pled guilty to conspiracy to commit robbery in a New Jersey state court, and he was sentenced to seven years in prison. (PSR at ¶ 54.)

In November 2010, after completing his state sentence, Garcia was transferred to federal custody for sentencing in his federal case. (PSR at ¶ 29.) The Government and Garcia's counsel requested a *Padilla*[2] hearing because Garcia had not been informed of the immigration consequences of his guilty plea he entered in November 2000. On May 19, 2011, this Court conducted the *Padilla* hearing and asked Garcia, a lawful permanent U.S. resident alien, if he wished to withdraw his guilty plea because he had not been informed of the immigration consequences of his November 2000 plea. (App078-085, *Padilla* Hearing Tr. at 2:8-6:16.)

During the hearing, Garcia acknowledged that he was aware of the immigration consequences of his guilty plea, and that he had the option of withdrawing his guilty plea. He further acknowledged that if he proceeded to sentencing, he would not be able to later withdraw his guilty plea. In addition, Garcia was advised of the maximum penalties he was facing and the 60-month sentence defense counsel was going to recommend to the Court. Garcia stated that he understood that the Government was not going to oppose the recommended sentence but that the Court was not bound by the recommendation. Finally, Garcia stated that he was satisfied with

---

[2] *See Padilla v. Kentucky*, 559 U.S. 356, 368-69 (2010) (holding that that a lawyer representing a non-citizen defendant in connection with a guilty plea has a constitutional duty to advise the defendant about the risk of removal from the United States, and when deportation "is truly clear" to so inform the defendant).

the advice he had been given by counsel. (App080-083, *Padilla* Hearing Tr. at 3:14-6:24.) At no point during the hearing did Garcia indicate that he wanted to pursue a motion to suppress the wiretap evidence or that he was dissatisfied with counsel's advice during the guilty plea proceedings.

At Garcia's sentencing hearing on July, 13, 2011, this Court accepted the recommendation from defense counsel, which was not opposed by the Government, and sentenced Garcia to the mandatory minimum sentence of 60 months in prison. (App094-096, Sentencing Tr. at 9:3-11:4.) Garcia did not file a direct appeal.

On May 21, 2012, Garcia timely filed this § 2255 motion. He claims that he was denied effective assistance of counsel, in violation of his Sixth Amendment right, because his counsel failed to challenge an allegedly illegal wiretap on Fourth Amendment grounds. Garcia further asserts that his guilty plea was not knowing or voluntary because he was not informed by counsel that he had a viable basis for a suppression hearing based on this alleged Fourth Amendment violation.

On March 27, 2013, after several extensions granted by this Court, the Government filed an answer to Garcia's § 2255 motion. (ECF No 13.) Garcia filed his reply on April 2, 2013. (ECF No. 14.)

## **LEGAL STANDARD**

A prisoner in federal custody under sentence of a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon three grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" or (3) "that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982), *cited in U.S. v. Travillion*, --- F.3d ----, 2014 WL 3029837, *2 (3d Cir. July 7, 2014).

In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted). "It is the policy of the courts to give a liberal construction to pro se habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010). The Court may dismiss the motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11–4646, --- F.Supp.2d ----, 2013 WL 4538293, at * 9 (D.N. J. Aug. 26, 2013) (Simandle, J.) (citing *Booth*, 432 F.3d at 545–46).

## DISCUSSION

Garcia asserts that his guilty plea was invalid because it was involuntary and unknowing based on ineffectiveness of counsel. Specifically, Garcia alleges that his counsel was ineffective because he did not move to suppress wiretap evidence on the ground that Garcia had not been named in the initial wiretap application as one of the individuals whose conversations were likely to be intercepted. Garcia contends that had he been informed of a viable basis for a suppression hearing, he would not have entered a guilty plea. (ECF No. 1, Motion at 2-4.)

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. VI. In order to

5

succeed on his claims alleging ineffectiveness of counsel, Garcia must satisfy the two prong test of deficient performance and resulting prejudice as set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See also Premo v. Moore*, --- U.S. ----, 131 S.Ct. 733, 739, 178 L.Ed.2d 649 (2011) (holding that "[t]o establish ineffective assistance of counsel, a defendant must show both deficient performance by counsel and prejudice"). First, Garcia must show that his counsel's performance (viewed as of the time of counsel's conduct) was inadequate and "fell below an objective standard of reasonableness," in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." *Id*. at 687–688. Garcia must then show that the deficient performance prejudiced the defense. In other words, Garcia must prove that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. *See also Rainey v. Varner*, 603 F.3d 189, 197-98 (3d Cir. 2010).

The U.S. Supreme Court has reiterated that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Because "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial," the Supreme Court has admonished lower courts that the "*Strickland* standard must be applied with scrupulous care...." *Harrington v. Richter*, --- U.S. ----, ----, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011). "It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence,'" however, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id*. at 788 (quoting *Strickland*, 466 U.S., at 690) (internal citations omitted). In order to pass the prejudice prong, Petitioner

6

must show, with reasonable probability, that but for the counsel's professional incompetence, the outcome of the proceeding would have been different. *Strickland* 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." *Id*. at 693.

In *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." Thus, "[u]nder *Hill*, a defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of such a plea by showing that counsel's performance fell beneath the standard articulated in *Strickland* ..." *United States v. Ordaz*, 111 F. App'x 128, 131–132 (3d Cir. 2004). To satisfy the "prejudice" requirement, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Missouri v. Frye*, --- U.S. ----, 132 S.Ct. 1399, 1409 (2012) (citing *Hill*, 474 U.S. at 59). The Third Circuit has stated "that a defendant 'must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial.'" *Rice v. Wynder*, 346 F. App'x 890, 893 (3d Cir. 2009) (citing *Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995).

As stated above, Garcia contends that he would not have entered a guilty plea if his counsel had informed him that he had a viable basis to suppress the wiretap evidence the Government obtained against him. Thus, Garcia insists that his counsel was ineffective for allowing Garcia to plead guilty without first pursuing a motion to suppress.

The Government counters that Garcia cannot meet *Strickland*'s prejudice requirement because the "record conclusively demonstrates" that Garcia was not interested in going to trial "because he wanted to cooperate" with the Government in exchange for a reduced sentence.

(ECF No. 13, Answer at 11.)  The Government also argues that counsel was not deficient and no prejudice ensued because a suppression motion was meritless.

This Court agrees, finding completely baseless Garcia's claim that counsel was ineffective for failing to file a motion to suppress.  It is well-established that "[n]either the Fourth Amendment nor the federal wiretap statute, Title III of the federal Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, proscribes the interception and use of audio or visual data of persons not specifically named in an application seeking judicial authorization of such interception."  *United States v. Urban*, 404 F.3d 754, 773 (3d Cir. 2005) (citing *United States v. Donovan*, 429 U.S. 413, 435 (1977) ("It is not a constitutional requirement that all those likely to be overheard engaging in incriminating conversations be named."); *United States v. Kahn*, 415 U.S. 143, 152–53 (1974) (rejecting interpretation of Title III requiring application for judicial authorization to "identify all persons, known or discoverable, who are committing the offense and whose communications are to be intercepted.") (internal quotation marks omitted); *United States v. Tehfe*, 722 F.2d 1114, 1117–18 (3d Cir. 1983) (holding that the wiretap application was directed, not at persons, but on the instrumentality used to further the criminal activity targeted).  Indeed, the Supreme Court emphasized that so long as the application for the electronic interception is supported by probable cause, "the failure to identify additional persons who are likely to be overheard engaging in incriminating conversations could hardly invalidate an otherwise lawful judicial authorization."  *Donovan*, 429 U.S. at 435; see also *Urban*, *supra*. Garcia offers no evidence or argument that the wiretap application was obtained illegally, only that he was not specifically named in the application.  Therefore, this Court concludes that counsel was not ineffective for failing to pursue a motion to suppress the wiretap evidence on the

ground suggested by Garcia as this motion would have been roundly rejected as wholly meritless under existing law.

Second, this Court finds no prejudice because Garcia cannot show that he would have insisted on going to trial in light of the substantial evidence against him, even if his counsel had explained the potential of a motion to suppress. Garcia's co-defendant, Gregory Marshall, had pled guilty and cooperated with the Government. (PSR at ¶4; *see also* App037.) Consequently, if Garcia had insisted on a trial, Marshall would have testified against him, and Garcia risked facing a substantially longer prison sentence than that which was offered in the plea negotiations. Instead, it is apparent from the record that Garcia chose to plead guilty and cooperate with the Government for a 60-month recommended sentence after hearing the Government's proffer of the overwhelming evidence against him, which included court-authorized surveillance and information from cooperating witnesses. Moreover, all of the co-defendants pled guilty for reduced sentences. Not one of these co-defendants filed a motion to suppress the wiretap evidence, suggesting that such a motion would not have been a worthwhile or viable defense as now belatedly argued by Garcia.

Finally, this Court concludes that Garcia's contention that his counsel was ineffective for failing to pursue a motion to suppress was waived by his guilty plea. Indeed, this Court finds that Garcia's guilty plea was knowing and voluntary as evidenced by the records of both the plea hearing and the *Padilla* hearing.

In *United States v. Jackson*, 523 F.3d 234, 243 (3d Cir. 2008), the Third Circuit directed that district courts should conduct a thorough colloquy under a Fed.R.Crim.P. 11(b) plea hearing to determine whether the plea was knowing and voluntary. Rule 11(b)(1) provides:

Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:

(A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;

(B) the right to plead not guilty, or having already so pleaded, to persist in that plea;

(C) the right to a jury trial;

(D) the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceeding;

(E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;

(F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;

(G) the nature of each charge to which the defendant is pleading;

(H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;

(I) any mandatory minimum penalty;

(J) any applicable forfeiture;

(K) the court's authority to order restitution;

(L) the court's obligation to impose a special assessment;

(M) in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a);

(N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence; and

(O) that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

Rule 11(b) further states that "[b]efore accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed.R.Crim.P. 11(b)(2).

Here, the November 29, 2000 plea hearing shows that Judge Greenaway scrupulously complied with the requirements under Fed.R.Crim.P. 11(b) by conducting an exhaustive colloquy of Garcia concerning the rights he was abandoning upon his guilty plea. The colloquy confirmed that Garcia was competent and had not consumed any drugs, medication or alcohol before the hearing. Garcia further testified that he understood the consequences of a guilty plea and that he had sufficient time to discuss his case with counsel and that he was satisfied with his counsel's representation. Garcia also affirmed that he understood the specific rights he was waiving by entering a guilty plea, namely, the right to be indicted by a grand jury, the right to a jury trial, that he was presumed innocent, and that the Government had the complete burden to prove Garcia guilty beyond a reasonable doubt, and that Garcia had the right to call witnesses and produce evidence in his defense. Garcia likewise acknowledged the role his counsel could take in a jury trial, such as confronting Government witnesses, which Garcia was relinquishing by a guilty plea. Based on Garcia's responses, Judge Greenaway concluded that Garcia was making an intelligent, knowing and voluntary guilty plea. (Plea Tr. at App052-072.)

Moreover, this Court conducted a colloquy with Garcia at his *Padilla* hearing, which further confirmed that Garcia was satisfied with the advice his counsel provided, and that he was not being threatened or coerced in any way to plead guilty. (*Padilla* Hearing Tr. at App082-083.)

Consequently, this Court finds that the colloquy conducted at both the change of plea hearing and the *Padilla* hearing establishes that Garcia entered a knowing, intelligent and voluntary guilty plea. It is evident that Garcia plainly understood and was fully aware of the rights he was waiving in pleading guilty, namely, his right to a jury trial to contest the Government's case against him. Garcia further affirmed at both hearings that he was satisfied with his attorney's performance and representation.

Thus, Garcia's guilty plea was knowingly and voluntarily rendered despite his claim that counsel was ineffective for failing to move to suppress the wiretap evidence. This § 2255 motion is without merit and is denied accordingly.

## **CERTIFICATE OF APPEALABILITY**

For the reasons discussed above, this Court denies a certificate of appealability because Petitioner has not demonstrated "a substantial showing of the denial of a constitutional right" as required under 28 U.S.C. § 2253(c)(2). *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

## **CONCLUSION**

For the reasons set forth above, this Court DENIES Petitioner's Motion and DECLINES to issue a certificate of appealability. An appropriate Order follows.

s/SUSAN D. WIGENTON
United State District Judge